Good morning. May it please the Court. My name is Aaron Wynn. I'm counsel for the appellant, Mr. Allen. This appeal presents three questions. The first is whether Mr. Allen stated a claim for inadequate dental care. The second is, if he didn't state a claim, should he have been given leave to amend? The third is, were his unrelated claims properly dismissed with prejudice, merely because they were unrelated? I'd like to begin with the first question, because I think it's central to the other two. The District Court held that Mr. Allen could not state a claim for inadequate dental care because of an allegation in paragraph 29, which is on page 49 of the record, that Mr. Chung, the dentist, had an inoperable air compressor. The District Court concluded that that allegation was true, and that as a result, Mr. Chung had no way to treat the tooth, and therefore could not have improperly denied dental care. The problem with that conclusion is twofold. First, Mr. Allen alleges that the inadequate air compressor was merely an excuse. Well, he doesn't directly allege that, right? I mean, that's an inference from his allegations? I think that's fair, but I think it's a fair inference. And what he says is, and further delays of extract in Tooth 19 were attributed. So at a minimum, that would indicate that perhaps amendment would be able to cure that and allow for more explicit articulation of what the allegation is? It could, but I think that all that Mr. Allen will ever be able to say, unless he's an expert in air compressors, is that the doctor told me it didn't work, and this was one of several different excuses he used to deny treatment. But the air compressor issue is interesting as well because the District Court cut off the delay on October 4th, the date of this visit, but the tooth wasn't actually treated until January. So the District Court seemed to think, and opposing counsel argues, that it wasn't deliberate indifference on the part of the dentist, Dr. Chung. There were a series of things that interfered with his ability to actually treat the truth, the tooth. And on that basis, it wasn't you can't show that he knew that your client was suffering excessive pain and deliberately ignored it. How do you respond to that? I think that's right, but I think the reason that the District Court concluded that the dentist could not treat the tooth and therefore was not delaying treatment for some improper purpose. The problem with that assumption, I believe, is that we don't know whether there actually was an inoperable air compressor. What was there in the record to reflect whether or not the dentist was able to pull the tooth earlier, to extract the tooth earlier? Well, what we have is the dentist. The history is interesting here, and I think it shows why there is a claim here. Mr. Allen came to the dentist with a problem. It was so severe he couldn't eat. The dentist said, we'll fill that tooth. We'll fix it up. He wanted a filling. He wanted a filling, and the dentist said, we'll fill it. At least that's what Mr. Allen alleges is they agreed to fill the tooth. When he came for that visit, the dentist said, this is not a tooth we're going to fill. We need to pull the tooth. Mr. Allen said, well, wait a minute. I don't want my tooth pulled. That sounds pretty severe. Let me ask you this. Did the dentist say that it would be more painful to fill the tooth? Was there something in the record about that? Not more painful. What he says is I think what the best I read Mr. Allen's allegations to mean is that the dentist thought the filling would not be adequate because the decay was so severe that it needed to be pulled. Because he ended up pulling it. I mean, there was a going back and forth about whether to extract it or root canal or what, but they ended up extracting it, correct? That's exactly right, and that's why the air compressor issue is, I think, important, because Mr. Allen said, fine, it's causing me so much pain. Pull it. Yank it. And then the dentist said, let's wait a few more months because my air compressor is broken and I want to do a root canal instead. Mr. Allen said, do whatever you need to do, but do it now. Let's wait a few more months. Meanwhile, Mr. Allen can't even eat anything but oatmeal, and in January the doctor says, you know what, I can't get this air compressor fixed. We assume that's the problem because he can't fix it. And since no one will fix this air compressor, let's just pull your tooth. So they pulled the tooth in January. Six months after, Mr. Allen said, please fix it. Now, we believe that that is sufficient to allege a claim for inadequate dental care. What does the record say, if anything, about the policy of the dental clinic regarding the time within which to administer treatment? Is there anything in the record? There's nothing in the record about the policy of the dental clinic. Another issue that I think is raised by the supposedly inoperable air compressor, though, is who are the proper defendants? Because Mr. Allen complains repeatedly when he's told, hey, there's an inoperable air compressor. He complains to the higher-ups. He says, well, wait a minute. If this is the problem, please fix it. And we don't know, but we know whether the air compressor was ever fixed. We know that Dr. Chung told Mr. Allen that it was repeatedly inoperable due to faulty repairs and ultimately that pulled the tooth. I think one inference from that is that the equipment never was operable. If that's true, the other defendants that Mr. Allen has alleged claims against may also be liable. It can't be the case that Dr. Chung can say, well, I can't treat your tooth because I don't have an air compressor, and the folks who are responsible for the air compressor can say, well, sorry about your tooth that causes you so much pain you can't eat. That's the dentist's problem. It seems like the other claims were a range of other claims not necessarily related to his dental problem. Is that correct? Correct. That's my reading of the complaint, yes. And so then the district court had told him you need to separate those claims out. You can't put them into the same complaint. But then when he refiled the complaint with the same claims in, the district court then dismissed it with prejudice. Yes. Couldn't the district court have done that under Rule 41? Well, it may have if this was someone represented by counsel. I think that that may have made more sense. Here we have a pro se plaintiff who's frankly not familiar with the legal process who's told, you stated a claim for dental clear, but these other claims, we don't know that they relate. And what you need to do is tell us how they relate. He tried to do that. And the court said, well, they'll be dismissed without prejudice if you file them again. That's exactly right. So he was told, you can try. They'll be dismissed without prejudice. He tried. And the court said, gotcha, dismissed with prejudice. End of story. We think that's error. I'd like to reserve three minutes for rebuttal. And I see I'm already over that time. But I do want to ask, answer any questions you have if there are any remaining. Judge Hogg, do you have any questions? No. All right. Thank you. Thank you, counsel. Good morning, Your Honors. Terrence Cassidy on behalf of the County of Stanislaus, making a special appearance at the request of this Court to respond to this appeal. May it please the Court. I'm going to first address the failure to state a claim under Section 1983 involving the alleged denial of adequate dental care. I'm having difficulty hearing you. Sorry, Your Honor. Usually I don't need a microphone, but I'll try to speak directly into it. You need one now. Okay. Thank you, Your Honor. You need to raise it up a little bit. You're a little taller, so maybe. Does that help a little? Yes. Okay. So initially addressing the claim for alleged denial of dental care under 1983, initially I would submit in this appeal, the only issue that's been addressed with respect to the failure to state a claim is that against Dr. Chung, the dentist. Therefore, any and all claims regarding any other potential defendants have been waived. They have not been addressed. So related to Dr. Chung, we know that clearly in the context of this case, what happens is the amended complaint, I think, fills out some of the factual background involving the alleged claim for failure to provide dental care. And in doing so, it essentially defeats the claim. And by that, I mean we know that through these facts now, that Dr. Chung did not knowingly disregard the care and treatment of Mr. Allen, nor, and I would say, there's likewise a difference in opinion regarding the choice. Mr. Allen went back to the dentist several times, trying to find another way that he could get relief from this tooth that was made him unable to eat. And the dentist couldn't find a way. And I think therein lies the key is that this has to do with the choice of treatment. We're initially talking about a filling. The doctor determines that a filling may not work. It should be an extraction. For the next two months, Mr. Allen refuses an extraction. And then when they finally decide on the extraction, there's an inoperable equipment problem. Well, before that happened, though, it says Allen agreed to the extraction, but Dr. Chung refused because Mr. Allen didn't know his trial or release date. And then, but then the complaint suggests that was not correct because then Dr. Chung filled another tooth without getting that information. And so how do we deal with those sorts of things, which he points to as being evidence of delay, unreasoned delay? Well, I would submit, Your Honor, that actually, as I understood the allegation, occurred on September 27th. If the initial request was on July 13th, with Dr. Chung offering to fill the tooth on July 24th, and then ultimately on August 9th, Mr. Allen refused. So there was a period of, I would say, a month and a half almost, or seven weeks, in which Mr. Allen had refused to allow for that tooth to be extracted. At that point in time, while Dr. Chung apparently was in the allegation, as we take as true, is that he was asking about when his custody release date is. We don't really know why that's relevant. However, what we do know is during that same ---- That's an important point. If it's not relevant, if the release date or the trial date's not relevant, then why would the dentist use that as a means for declining treatment? Well, I can only suppose that, Your Honor. What I suppose is there's a concern about a postoperative infection, and that postoperative infection, in fact, that happened in the McGowan case that's cited in the appellant's opening brief, that the postoperative infection, there has to be care and treatment post-extraction to be sure everything's clear. But a requirement before he does the treatment that he has to have a form saying when his trial or release date? I do not believe there is an allegation that says there is a requirement of that, simply that the doctor was making that inquiry before he would do it. But at the same time, the allegations admit that, in fact, the doctor did do an X-ray on September 27th of tooth number four and came back, and that one didn't need a filling, but tooth number five was filled on October 4th. And at that time ---- But aren't these the sorts of things you would raise at trial? I mean, we're just looking at whether there was enough in the complaint to survive a motion to dismiss or dismiss without prejudice so he could reallege. I mean, what we have here, just from the allegations of the complaint, is the first time it looked like Mr. Allen rejected the treatment, but then after that there was one reason, several reasons, given by Dr. Chung as to why he wouldn't do treatment. And Mr. Allen's claim is, well, but they wouldn't read them all together, and in light of other information they look like they're baseless excuses. And it may turn out that Dr. Chung had absolutely perfect reasons for each of them, but don't we wait? Doesn't that survive a motion to dismiss? We wait and develop at a trial or a summary judgment? On behalf of the county of Stanislaus, and bearing in mind as we make this special appearance that Dr. Chung is an employee of CFMG, which is the medical provider for that facility. But speaking, I think, to some extent on behalf of Dr. Chung, I would submit that, in fact, the reasons given are alleged, and that is that Mr. Allen specifically indicates that when there's discussion about the root canal, there's even his admission that this had to do with the form of the root and therefore ultimately that became inappropriate. When we look at what you're referring to, Your Honor, I think is we still have conclusions here. What we have are conclusions. He says it's ephemeral reasons, contradictory reasons. But I don't read all those contradictory reasons. I see a course of disagreement with the treatment until the inoperable air compressor. At the time of the air compressor. The issue about the release or trial date is not a disagreement about treatment at all. That has nothing to do with the treatment as far as the allegations are concerned. But that doesn't, that, when the next time that he comes in for the treatment is October 4th, as alleged by Mr. Allen. We can't ignore that allegation in determining whether or not there was sufficient evidence, sufficient pleading of deliberate indifference. We can't just throw that allegation out. But taken in the context of the allegation there is that there was an inoperable air compressor, there's no facts that show a pretext there. So regardless of that allegation having to do with when he is supposed to be released. If you read it in the light most favorable to the plaintiff, which we are required to do on a motion to dismiss. Your explanations don't carry the day. It's whether or not fairly read and liberally read in favor of the plaintiff, there's enough to state a claim. I respectfully disagree in the sense that that issue about the timing of his release from custody versus the inoperable air compressor is we know the compressor is inoperable. This is the allegation that's made. What's missing here in terms of this delay are the facts that give rise and overcome that conclusion about the air compressor being inoperable. If truly it was inoperable, then the extraction couldn't go forward. But we don't know that. And that would wait for discovery and some kind of definitive proof one way or the other. What I was going to add to that, Your Honor, is that there are no facts that say other inmates, other pretrial detainees were getting extractions from the dental care at that facility. There was ongoing dental care. And that all is a pretext. What they told me about the inoperable air compressor is a pretext. But there are no such facts alleged. And that's why I think it's defeated in itself in the complaint as framed. The thing that I have a very hard time seeing is that all of this occurred over six months. This guy is suffering for that period of time, and there's nothing that the dentist could do knowing that he couldn't eat, he couldn't do anything other than try to some way or other get away from the pain. But for six months, he was in this pain, and the dentist could do nothing about it. Now, I don't understand how that could be. Your Honor, I would submit that as to the initial allegations, there is a period of at least two months in which there's a disagreement regarding the treatment. And thereafter, as of approximately October 4th through December, I would agree there was inoperable equipment. So if there still is, if they agree upon the treatment but the equipment's not available, I don't think that's the fault of the doctor acting with deliberate indifference. The doctor has to knowingly disregard the care, and I don't see that giving rise to a constitutional claim. There was nothing the dentist could do to alleviate this pain for all that time? As far as we know, no, based on the allegations, other than the fact the equipment was not working. But we do know that when he was there, if this dentist was going to ignore him and act with deliberate indifference, as required to give rise to a constitutional-type claim under the Eighth Amendment, then he's also taking an X-ray of another tooth and filling another tooth. So therein lies at least some treatment, some modicum of care for Mr. Allen. But not the tooth that was giving him the problem. How does this case differ from Hunt in your view? I think actually the ‑‑ Because that was a delay as well. Delay can equate to deliberate indifference, under Hunt at least. I believe the difference in Hunt is the severity of the problem and the tooth problem having to do with not just a single tooth having pain, if you will, but there Mr. Hunt had lost his dentures, so he'd lost effectively all of his teeth. Those remaining teeth, the allegations in Hunt were that what little teeth he had left were breaking as he was trying to eat something. And I would put that in a category of a severe and serious medical need. Well, but you don't dispute that this was a serious medical need. You didn't dispute it in your opinion. No, Your Honor. So that's probably not a good distinction, because you've already conceded that this was a serious and severe medical need. Correct. It wasn't raised in that manner in our brief. But in response to your inquiry about how I would distinguish it, that would be my response. All right. Thank you. You conceded your time. I apologize. Any questions? I have one more question. Yes, Your Honor. I can't understand how this is a dismissal without any opportunity to amend. A dismissal where there was no opportunity to discover facts or to submit anything other than just a dismissal period. My response to that, not being able to go behind the magistrate's judges' findings or recommendations or the district court in affirming those, but only that I believe they felt, based on the allegations in the complaint, that they were not sufficient to give rise to deliberate indifference. In essence, Mr. Allen had pled himself out of the claim, in which he may have previously at least raised some questions. But with additional facts, that's what defeated the claim in and of itself. All right. Thank you, counsel. Thank you, Your Honors. May I follow? Yes. Thank you, Your Honor. First, there was no disagreement about treatment for two months. On July 24th, when Mr. Allen went to go see the dentist, is the first time the dentist told him, I think we should extract the tooth. It was August 8th that they agreed to have the extraction. July 24th to August 8th is not two months. And from August 8th until January of the next year, Mr. Allen was willing to do whatever the dentist recommended to get rid of the pain. I thought he rejected the recommendation to extract it in August. Well, the way I read the complaint in paragraph 28 is, at the end of paragraph 28, on July 24th, Dr. Chung offered to fill tooth number 19, and Plainiff accepted that offer and scheduled it for August 9th, 2008. So the way I read it is that sometime actually before August 9th, he agreed to the tooth extraction so they could schedule it for August 9th. Well, I thought, well, I guess it doesn't matter the details. Sorry. And if there's another allegation that's different, I don't know. That's the one that I'm familiar with, is that August 9th, from that point forward, he was willing to agree with the dentist's recommendation. Is there any recommendation, or was there a difference that he opposed certain aspects of it himself? No. I think the only objection was the initial objection to pull the tooth. After August 9th, the way I read the allegations, there was no objection whatsoever to any treatment that the dentist. So paragraph 17 said, upon Plaintiff's return for procedure on August 9th, Dr. Chung withdrew his offer to fill Plaintiff's tooth and offered to pull the tooth. And Plaintiff rejected that offer and insisted Dr. Chung honor the original agreement, which Dr. Chung refused. It looks like there's a discrepancy in the complaint. It's unclear to me whether that happened on the 9th or prior to the 9th. Well, he says it was on the 9th. I mean, that's in paragraph 17. And all I can say is paragraph 28 says that he scheduled it, that he objected earlier and that he scheduled it for the 9th. I think regardless of whether that happened on the 9th or some date thereafter, undisputed is the fact that from sometime mid-August, let's say at least, until January, there was no dispute about treatment. Well, at some point there was a root canal in the mix. Right. But Mr. Allen never objected to the root canal. He was ‑‑ he welcomed it. He wanted to get rid of the pain. And that's part of the reason he claims this is suspicious. The dentist says, let's fill it. Oh, no. Let's do a root canal. Oh, no. Let's just pull it. And I don't think that the faulty equipment was the reason they couldn't pull the tooth. At any point in time during this procedure, it appears to me they could pull the tooth. I think the root canal procedure was what required the air compressor. And that's another reason why I think this is a highly suspicious chain of events, because ultimately the dentist did pull the tooth after forcing him to wait whether it's five or six months for treatment. All right. Thank you, counsel. You've exceeded your time. Any questions? All right. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is Cower v. Holder.
judges: Hug, Rawlinson, Ikuta